Assumpsit for an injury done to plaintiff's boat; after the whole case had been submitted to the jury, the judge, being of opinion that the plaintiff was not entitled to recover upon the evidence, so declared, and thereupon the plaintiff submitted to a nonsuit, and appealed.
The sole evidence was that of one witness, John W. Pugh. He deposed that the railroad of the defendants terminated at Gaston, where the defendants had a large warehouse in which goods brought on the railroad to Gaston were deposited; that he, the witness, was a commission merchant and forwarding agent and resided at Gaston and had resided there about twelve years; that in November, 1849, certain goods from the town of Petersburg were brought by the defendants on their road to Gaston and deposited in their warehouse; that the said goods were marked and directed to persons residing on the river above Gaston, and were consigned to the witness as the forwarding agent of the owners; that (326) he, the witness, employed the manager of plaintiff's boat to convey the goods from Gaston up the river to the owners, and directed the boatman to come to the wharf and take the goods on board of his boat; that the warehouse of the defendants was situated on the river bank, and a wide platform, connected with the warehouse, extended over the water, at a considerable height above the water, and was supported by a plank wall, which rose out of the water and came up to the edge of the platform; that on this platform were erected certain fixtures of *Page 223 
iron, to which was attached a crane, and that there was a sling of rope, to the ends of which were fastened iron hoops, into which sling the goods were put by passing the rope around the goods; that the hooks were then attached to the crane, and the crane was then slung round, so as to move the goods beyond the edge of the platform over the water; that the goods were then lowered by the working of the iron machinery into the boat underneath. The witness further deposed that he went into the warehouse of the defendants and weighed the goods, which had been consigned to him as aforesaid, and ordered the slaves of the defendants to remove the goods from the warehouse to the platform and let them down into plaintiff's boat by the crane and sling; that the goods consisted of heavy barrels, etc., weighing in all about 1,300 pounds; that the slaves were in the process of loading the sling and lowering it on the platform, while the witness was in the house, about 15 feet from them, and where he could see the operation of the hands; that the iron part of the machinery was defective, and the rope was too weak and was unsafe, though heavier freight had been let down with it; that the crane was turned off in too much hurry by the hands; that because of the haste and the bad working of the machinery the sling was turned off with a sudden fall, the rope broke and the barrels fell on the boat and destroyed it. The witness also stated that there was a stronger and sufficient rope lying on the platform, which might have been used, but was not; (327) that the fixtures aforesaid were the property of the defendants, and were kept up by them to raise produce from boats to be carried on the road, and to lower goods brought on the road into the boats on the river. The witness further stated that the defendants always had slaves as hands about the depot, to assist in raising produce from the boats and letting it down into the boat, and on this occasion the witness employed the slaves of the defendants, but the defendants never made any charge or received any compensation from him for the use of the machinery or the hands in weighing goods consigned to him or letting them down into the boats; that he took the goods out of the warehouse, weighed them, and ordered the slaves of the defendants to let them down into the boat, without the knowledge or consent of defendants' agent upon that occasion; but for years he had been in the habit of taking goods consigned to him out of defendants' warehouse, weighing them on defendants' scales and lowering them into boats, with the aid of defendants' slaves and machinery, without any objection on the part of defendants or their agent. The witness further stated that the boatman could not see the sling before it was turned off the platform, and it was usual for the hands on the platform to give notice to the boatman before the sling was turned off, but it was not done on this occasion. The witness further stated that when goods consigned to him were deposited in boats, he took *Page 224 
a receipt from the boatman, and then gave a receipt to the defendants for the goods; that he had given no receipt to the defendants for these goods. The witness further stated that some time since a hogshead of tobacco got injured in raising it from a boat, and the president of the company, being present, said that for any deficiency in the warehouse the company was liable.
It was argued for the plaintiff that either as carrier or warehouseman the defendant was bound to deliver the goods on board the boat, to be taken up the river to the owners. But that point is not material to the present controversy, which is for an injury to the plaintiff's boat from unskillfulness and negligence in loading. Suppose the defendant to be thus bound: yet that would be to the owner only; and on request, and for a refusal, the plaintiff could have no action, although damage might be done to his boat in taking in the load under the direction of some one else. The question is, Who is the author of the injury sustained by the plaintiff? Whether bound or not to deliver the goods to the owner on board of the boat, if the defendant had undertaken to load the boat, and by the negligent use of an indifferent rope the goods fell and did the damage, the plaintiff might have had an action. But, in point of fact, the defendant did not undertake it. There was no request to defendant's officers to do so; but, on the contrary, the owner of the goods, or, which is the same, the consignee, selected the goods and took them under his own charge in the warehouse, and, taking the slaves about the establishment, he made them do the work under his own direction. He did not act as the agent of the defendant, it is clear; for he had received no authority as agent, and certainly, if the goods had received damage from falling into the water, he could have had no redress against the company for his own want of skill or care about his own goods; nor can the present plaintiff. It would be peculiarly hard if he could; as a sufficient rope was provided, and on the spot, by which the goods (329) might have been let down safely, had the witness seen fit to use it. The time when the witness usually took and gave receipts for the goods makes no difference; the substance is, whether he accepted the goods and took them into his own care and disposition, and not whether he gave a receipt for them.
PER CURIAM. Affirmed. *Page 225